UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: THREE MOBILE DEVICES SEIZED BY THE FBI (AS FURTHER DESCRIBED IN ATTACHMENT A) | Case No. MJ 21- 87 -GF-JTJ |

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Justin Harken ("Your affiant"), a Special Agent (SA) with the Federal Bureau of Investigation (FBI), Salt Lake City Division, being duly sworn, depose and state as follows to wit:

1.  I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been so employed by the Federal Bureau of Investigation (FBI) since January of 2020.  I am currently assigned to the FBI Field Office in Havre, Montana (MT) and I am primarily tasked with investigating violent crimes on the Fort Belknap Indian Reservation (FBIR) and the Rocky Boy's Indian Reservation (RBIR). Prior to my employment with the FBI, I served as a Police Officer and Detective with the Fargo Police Department in Fargo, North Dakota for over eight years.  As an Officer, Detective, and now a Special Agent with the FBI, I have participated in several investigations involving violent crimes which have resulted in the arrests and convictions of individuals. I have participated in investigations that involve sophisticated electronic surveillance methods to include GPS vehicle trackers, pen registers and trap and trace devices.

2.    Affiant knows from training and past experience with criminal investigations that people involved in criminal activity often use cell phones and mobile devices to communicate with others through voice calls, text messages, email, and social media messaging platforms. Specifically, Affiant knows from training and past experience with narcotics investigations that persons involved with narcotics distribution often utilize cellular phones and other mobile devices to further their illegal activity.  Cellular phones and mobile devices can be used to arrange narcotics transactions through text messaging and phone calls.  Cellular phones and mobile devices can be used to record the contact information of narcotics buyers, suppliers, and associates of the distribution organization.  Persons involved in narcotics distribution often use cellular telephones and mobile devices to photograph or video record their criminal activity or possession of items illegally obtained.  Cellular phones and mobile devices can be used to record, store, and/or transmit these photographs or videos and to document transactions or sales of controlled substances.  As a federal agent, affiant is authorized to investigate violations of laws of the United States and is a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3.    The statements in this affidavit are based in part on information provided by law enforcement officers assigned to other law enforcement agencies, other Special Agents and employees of the FBI and on my experience and background as a Special Agent of the FBI, and information received from confidential informants.  Since this affidavit is being submitted for the limited purpose of securing a warrant from the Court, your Affiant has not included each and every fact known to me concerning this investigation.  Your Affiant has set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of possession

2

and/or distribution of controlled substances, specifically but not limited to methamphetamine and/or its associated proceeds in violation of Title 21, United States Code, Section 841 and 846, and the use of wire facilities to facilitate the same, Title 21, United States Code, Section 843(b), are being stored in the in items further described in Attachment A**.**

4.   Within the mobile devices (as further described in Attachment A), it is requested that the following items be seized (as further described in Attachment B):

A.   The specific telephone number assigned to the cellular telephone.

B.   The specific ESN, MEID, IMSI, or other number assigned to the cellular telephone.

C.   Any and all digital evidence, fruits, or instrumentalities of distribution of a controlled substance, conspiracy, and illegal use of communication facility, stored on the cellular telephone including but not limited to voicemail messages, text messages, lists of incoming and outgoing calls, phone history, phone directories, address books and contact information, photographs, videos, digital images, and telephone applications ("apps") that allow texting and/or other communications between devices such as cellular telephones.

5.   Affiant believes the property described above is evidence of the crimes of Distribution and Possession with Intent to Distribute a Controlled Substance, Title 21, United States Code, Section 841(a)(1) and conspiracy to do the same.

## **FACTS ESTABLISHING PROBABLE CAUSE**

6.   Based on your Affiant's knowledge and experience, and on information received from other individuals, including law enforcement officers, as well as their reports, and information obtained from confidential informants as set forth below, your affiant has learned the following:

7.   On August 16, 2021, your Affiant, along with officers from the Rocky Boys Police

3

Department, responded to a shooting near 115 Ponderosa St within the exterior boundaries of the Rocky Boys Indian Reservation. Upon arrival, officers found Elias Bacon deceased in front of 115 Ponderosa St. with an apparent gunshot wound to his upper body. Witnesses stated a female, later identified as Shaide Jo Demontiney, fled the scene in a vehicle immediately following the shooting.

8.    Demontiney was found a short time later near the vehicle she used to flee from the scene and was detained. She was found to be in possession of a handgun. In her back pocket was a black Samsung cellphone (listed as item #3 in Attachment A), which she claimed was not hers but that she had found it in the vehicle. In the vehicle was a black Samsung Galaxy (listed as item #2 in Attachment A). She confirmed this Samsung Galaxy was hers but later changed her statement and said it was her friend's, but she was using it on August 16, 2021. Both mobile devices were collected by law enforcement.

9.    Video surveillance footage from a couple houses away captured the shooting from the outside of the vehicle. The vehicle Demontiney was found near can be seen parked on Ponderosa St. A woman later identified as Lena Henderson is talking to the vehicle's occupants through the driver's side window. After Henderson walks away from the vehicle, a shot can be heard. The driver's door then opens, and another shot can be heard. Bacon then runs out of the vehicle, onto the sidewalk, and collapses. The driver's door is then shut from inside and the vehicle drives away.

10.   Demontiney said she got a ride from Elias Bacon. During the ride he flashed cash and drugs and put his hand on her thigh over her pants. She slapped his hand away and told him to stop. He offered her money and drugs for sex. She made it clear she did not want anything like

that with him and she just wanted to go to the store. After going to the store, while sitting in the car, Bacon put his hand on her breast, under her shirt. She grabbed her gun out of her purse. Bacon leaned back and she shot him in the chest. Bacon stumbled out of the car and she drove the car away because she did not know what to do. She said she shot Bacon because he was treating her like a prostitute, and she did not like that.

11.   During the autopsy of Elias Bacon, he was found to be in possession of suspected methamphetamine and a Samsung smart phone (listed as item #1 in Attachment A).

12.   Lena Henderson was interviewed and said she was standing outside of the vehicle Demontiney and Bacon were in just before the shooting. She could feel tension between Demontiney and Bacon. Demontiney seemed anxious and told Bacon she "wasn't getting what she wanted." Henderson felt Demontiney was rushing Bacon to do something and was irritated with him. Bacon responded, "I'm not the one. Slow down." Henderson did not see any flirting or sexual behavior between the two. She felt if Demontiney was being sexually assaulted she could have told her.

13.   In speaking with other law enforcement officers and FBI Agents, your Affiant learned that Demontiney was a known associate of drug dealers/users on the Rocky Boy Indian Reservation.

14.   It is your Affiant's experience that individuals who are involved in narcotics distribution organizations utilize cellular telephones to communicate with each other and to arrange meetings with the buyers and suppliers of the illegal narcotics.  Digital information stored on cellular phones and or SIM cards, such as text messages, emails, photographs, videos, phone logs, and address books or contacts list, indicate who a person is communicating with and what type of

activity they are involved in.  Ultimately, this information will assist the FBI Salt Lake City in determining the extent of the criminal activity and other individuals who may have knowledge of, or be involved with, the illegal narcotics distribution operation.  In preparing this affidavit, I have consulted with other agents and law enforcement officers who are experienced in narcotics investigations and the above opinions are shared by them.

15.  Based on the facts and circumstances, Agents believe there is enough probable cause to believe that the Samsung smart phone collected from Bacon (listed as item #1 in Attachment A), the Samsung Galaxy found in the vehicle (listed as item #2 in Attachment A) and the black Samsung cell phone seized from Demontiney (listed as item #3 in Attachment A) contain further evidence, including a possible motive for the shooting and the identification of other potential targets, of federal violations including but not limited to those listed in 21 U.S.C. §§ 841(a)(1) and 846, specifically, the illegal manufacture, distribution, or possession with intent to manufacture or distribute, or otherwise dealing in controlled substances, including but not limited to methamphetamine, conspiracy to do the same in violation of Title 21, United States Code, Sections 841 and 846;

16.  Stored digital information on the cellular phones and mobile devices listed may not be capable of being presently viewed due to the length of time since the electronics were last charged.  A power source may be required to view the digital information.  It may therefore be necessary that the cellular telephones and mobile device listed be charged before a search can be performed.  If the electronic devices need to be charged prior to being searched, the appropriate charger and/or batteries will be obtained.  Once the electronic device is charged, a search will be performed by a law enforcement officer in order to seize the information listed in this Affidavit

for Search Warrant.  If the cellular telephones are locked however, or there is a large quantity of data stored on the cellular phones, FBI may request the assistance of the Intermountain West Regional Computer Forensics Laboratory or other computer forensic laboratories to assist agents in the execution of this warrant.

17.   Based on the foregoing, your affiant respectfully submits that there is probable cause to believe that the cellular telephones, the internal SIM card and or Micro SD card as further described in Attachment A have been used to facilitate the distribution of controlled substances, specifically but not limited to methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1).

18.   Your Affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search of items listed in Attachment A and the seizure of items listed in Attachment B.

DATED this 10th day of December, 2021.

Justin Hacken, Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this 10th day of December, 2021.

HON. JOHN JOHNSTON
UNITED STATES MAGISTRATE JUDGE

7